Iamele *v.* Asselin.

## Lesley Iamele *vs.* Raymond Asselin.

Nantucket. May 3, 2005. - July 22, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Abuse Prevention. Protective Order.*

This court concluded that a plaintiff seeking an extension of a domestic abuse
prevention order pursuant to G. L. c. 209A, § 3, must make a showing
similar to that of a plaintiff seeking an initial order, e.g., a reasonable fear
of imminent serious physical harm at the time that relief is sought
[736-741]; where the judge hearing a request for an extension of a protec-
tive order made no assessment of the credibility of the plaintiff, this court
was unable to determine whether an extension would be required on the
facts of this case, and therefore, this court remanded the case for further
proceedings [741]; however, the judge erred in vacating the initial order,
where the only issue before him was whether the order should be extended
[741-742].

Complaint for protection from abuse filed in the Nantucket
Division of the District Court Department on June 19, 2002.

A motion to extend an abuse prevention order was heard by
*W. James O'Neill*, J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Pauline Quirion* (*Janet M. Donovan* with her) for the plaintiff.

*Sarah Coooleybeck, Jessica V. Barnett, & David A. Kluft*, for
Domestic Violence Council, Inc., & others, amici curiae, submit-
ted a brief.

Cowin, J. We are asked to define the standard for extension of
a domestic abuse prevention order pursuant to G. L. c. 209A,
§ 3. The plaintiff, Lesley Iamele, appeals from the denial of her
request to extend such an order previously issued against the
defendant, Raymond Asselin. It is unclear what standard the
judge used in denying her request for an extension of the order.
We granted the plaintiff's application for direct appellate review.
We hold that a plaintiff seeking an extension of a protective

order must make a showing similar to that of a plaintiff seeking an initial order — most commonly, the plaintiff will need to show a reasonable fear of imminent serious physical harm at the time that relief, whether in the form of an original order or an extension of an order, is sought. G. L. c. 209A, § 3. In the absence of specific findings and conclusions of law, we are unable to determine the standard the judge applied here; we remand the case for a further hearing.

*Facts.* The plaintiff and the defendant were engaged in a domestic relationship that produced a son. According to the plaintiff's testimony at the renewal hearing, the defendant had abused her physically approximately two to four years previously, including breaking her ankle and shoulder, striking her in the face, and punching out her teeth.

The plaintiff had sought and received a protective order against the defendant pursuant to G. L. c. 209A. The order expired on June 17, 2002. The day after the order expired the defendant telephoned the plaintiff and became "highly agitated and threatening." Realizing that the prior order had expired, the plaintiff sought and received a new protective order. That order was extended the following year, see G. L. c. 209A, § 3 (allowing repeated annual extensions), until June 14, 2004.

On that date, the plaintiff again sought renewal of the order for another year. At a hearing the plaintiff supported her request by testifying about several telephone calls the defendant had placed to her work and home during the previous year, the most recent of which was six months before the hearing. According to the plaintiff, the defendant initially would state that he loved her and wanted to reconcile with her, and then he "would get nasty." The telephone calls to her place of work caused her to lose her job. Due to these telephone calls and the prior physical abuse, the plaintiff stated, "I am in fear of this man. If I don't have this [r]estraining [o]rder, he's going to kill me like he's threatened to." The defendant did not testify at the hearing, apart from stating, in response to an inquiry from the judge, that he did not live on Nantucket, as does the plaintiff.[1] His attorney maintained that the defendant wished to have contact only in

---

[1]The defendant did not live on Nantucket at the time of entry of the original 2002 order.

order to reestablish his relationship with his son, of whom he had custody until 2002. At the time of the hearing, the defendant was on pretrial probation in criminal cases resulting from his violations of the protective order the plaintiff had obtained.

Despite finding that "this woman clearly is in fear no matter what," the judge refused to extend the order. The record does not indicate the reason for the judge's refusal, and we cannot discern whether he agreed with the defense that the plaintiff was required to show a reasonable fear of imminent serious physical harm for the order to be extended. The defendant's counsel stated, "[A]s Your Honor has already said," the "plaintiff has to prove by a preponderance of the evidence that she is actually in fear of imminent serious harm from the defendant. . . . Her fear must be reasonable," and the judge later replied, "I know what the law is. . . . I know what my . . . duty is." The judge refused to extend the order because the plaintiff "ha[d] not met the burden," but did not specify what that burden was. While he recognized the plaintiff's fear as genuine, he questioned "whether [the plaintiff's fear was] reasonable or not" and made no mention of the imminence of the potential future abuse. The judge not only declined to extend the c. 209A order, but also vacated it sua-sponte.

*Discussion.* 1. *Statutory language and purpose.* We must consider whether the standard for granting an extension of a protective order is the same as that for granting an initial order. In construing the statute, we adhere to the rule that "[s]tatutory language is the principal source of insight into legislative purpose." *Adoption of Marlene,* 443 Mass. 494, 497 (2005), quoting *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.,* 392 Mass. 407, 415 (1984).

Whether seeking the issuance of an initial protective order or a later extension of that order, "[t]he burden is on the complainant to establish facts justifying [its] issuance and continuance." *Frizado* v. *Frizado,* 420 Mass. 592, 596 (1995). The plaintiff must meet that burden by a preponderance of the evidence. *Id.* at 597. To obtain an initial protective order, a plaintiff must show that he or she is "suffering from abuse." G. L. c. 209A, § 3. "Abuse" is defined as "one or more of the following acts . . . (*a*) attempting to cause or causing physical harm;

(*b*) placing another in fear of imminent serious physical harm; (*c*) causing another to engage involuntarily in sexual relations by force, threat or duress." G. L. c. 209A, § 1. When a person seeks to prove abuse by "fear of imminent serious physical harm," our cases have required in addition that the fear be reasonable. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 349-350 (1990) (analogizing to common-law assault in determining whether complainant had reasonable apprehension that defendant might physically abuse her). See also *Commonwealth* v. *Robicheau*, 421 Mass. 176, 180 n.4 (1995); *Commonwealth* v. *Martinez*, 43 Mass. App. Ct. 408, 413 (1997). A plaintiff seeking an initial order on the basis of abuse as defined in § 1 (*b*) must show that he or she is *currently* in fear of imminent serious physical harm, see *Dollan* v. *Dollan*, 55 Mass. App. Ct. 905, 906 (2002), as well as that the fear is reasonable.

By contrast, the plain language of G. L. c. 209A, § 3, which also governs extension proceedings, does not provide any similar directive concerning the standard for extension of an initial protective order. Section 3 states in pertinent part: "If the plaintiff appears at the court at the date and time the order is to expire, the court shall determine whether or not to extend the order for any *additional time reasonably necessary to protect the plaintiff* or to enter a permanent order" (emphasis supplied). The plaintiff suggests that the standard articulated in the statute is to be derived from the "reasonably necessary" language, and that it encompasses different criteria from those required to obtain an initial protective order. We disagree. The language "reasonably necessary to protect the plaintiff" is not intended to alter the criteria for issuing a protective order. That phrase simply modifies "additional time," the words immediately preceding it. In addition, the words "reasonably necessary to protect the plaintiff" are followed immediately by the words "or to enter a permanent order," also a matter of duration. Indeed, we have previously interpreted the words "reasonably necessary" as a temporal standard. See *Crenshaw* v. *Macklin*, 430 Mass. 633, 635 (2000) ("at a renewal hearing, a judge[] . . . may issue a permanent order; or . . . an order of shorter duration of 'any time reasonably necessary' to protect the abused person"). See also Guidelines for Judicial Practice: Abuse Prevention Proceedings § 6:09 commentary (Dec. 2000).

We have also stated previously that the legislative history of § 3 supports reading the words "reasonably necessary" as defining the duration of the extension order. Before 1990, the statute authorized a judge to extend initial orders for "such additional time as [the judge] deems necessary to protect the plaintiff from abuse." G. L. c. 209A, § 3, as appearing in St. 1983, c. 678, § 4. We have interpreted that earlier language as leaving "to the discretion of the judge the time period of any extension of an initial abuse prevention order." *Crenshaw* v. *Macklin, supra* at 636.[2] Thus, the "reasonably necessary" language does not address the criteria a plaintiff must show in order to obtain an extension, but rather the duration of such an extension once it is determined that an extension is justified.

There is only one reference in the statute to the showing required for extension of an initial order: "The fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order . . . ." G. L. c. 209A, § 3. See *Mitchell* v. *Mitchell*, 62 Mass. App. Ct. 769, 773-774 (2005); *Pike* v. *Maguire*, 47 Mass. App. Ct. 929, 929 (1999). This language does not change the criteria for granting an order. It simply acknowledges the reality that, in some cases, respondents will obey the initial order, and that obedience alone is not a ground for refusing an extension of the initial order.

Section 3 of the statute, the only section that discusses extensions, contains no other language bearing on the nature of the proof to be applied to a plaintiff's request for an order's extension. Had the Legislature intended there to be a standard different from that governing issuance of the original order, we presume it would have said so. See *C.O.* v. *M.M.*, 442 Mass. 648, 652 (2004) ("Had the Legislature intended to further limit the scope of 'substantive dating or engagement relationship,' [in G. L. c. 209A, § 1 (*e*),] it would have included any such limitation in the text of the statute"). In the absence of such language, we have no guidance as to what a lesser standard would be. To generate new definitions of abuse out of whole cloth, or to bor-

---

[2]The 1990 amendment clarified that a judge also could enter a permanent order. St. 1990, c. 403, § 3. See *Crenshaw* v. *Macklin*, 430 Mass. 633, 636 (2000).

row novel standards from other jurisdictions with statutory language different from our own, would be an act of judicial legislation that would exceed both our authority and our expertise. "We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design." *Commonwealth* v. *Callahan,* 440 Mass. 436, 443 (2003), quoting *Commonwealth* v. *McLeod,* 437 Mass. 286, 294 (2002). See *C.O.* v. *M.M., supra* at 651-652. Given that the plaintiff seeks the same protection in asking for either an initial order or for an extension, and that an order would have the same impact on the defendant in both circumstances, it is not irrational that the criteria for obtaining an extension are similar to the criteria for obtaining an initial order.

Thus, we agree with statements by the Appeals Court that an initial order "expires unless extended after a judicial determination, essentially, a new finding, that the plaintiff continues to require protection from 'abuse' as explicitly defined in c. 209A, § 1," *Jones* v. *Gallagher,* 54 Mass. App. Ct. 883, 889 (2002) ("no distinction" between definition of "abuse" at initial hearing and at renewal hearing); see *Pike* v. *Maguire, supra* at 929-930 (judge could conclude that plaintiff "continued to have the same reasonable fear of physical harm that had supported the issuance of the restraining order sought to be extended"), and that "[t]he only criterion for extending the original order is a showing of continued need for the order." *Doe* v. *Keller,* 57 Mass. App. Ct. 776, 778 (2003), quoting *Pike* v. *Maguire, supra* at 929. See *Mitchell* v. *Mitchell, supra* at 782; *Jones* v. *Gallagher, supra* at 889. See also Guidelines for Judicial Practice: Abuse Prevention Proceedings § 6:08 commentary (Dec. 2000). See *Commonwealth* v. *Molloy,* 44 Mass. App. Ct. 306, 309 (1998) ("extension of an annual order pursuant to § 3 . . . is . . . by no means automatic").

The inquiry at an extension hearing is whether the plaintiff has shown by a preponderance of the evidence that an extension of the order is necessary to protect her from the likelihood of "abuse" as defined in G. L. c. 209A, § 1. See *Frizado* v. *Frizado,* 420 Mass. 592, 596 (1995). Typically, the inquiry will be whether a plaintiff has a reasonable fear of "imminent seri-

ous physical harm." G. L. c. 209A, § 1 (*b*).[3] In evaluating whether a plaintiff has met her burden, a judge must consider the totality of the circumstances of the parties' relationship.[4] Such consideration furthers the Legislature's purpose to establish a statutory framework to "preserv[e] . . . the fundamental human right to be protected from the devastating impact of family violence." *Champagne* v. *Champagne*, 429 Mass. 324, 327 (1999).[5] The judge is to consider the basis for the initial order in evaluating the risk of future abuse should the existing order expire. This does not mean that the restrained party may challenge the evidence underlying the initial order. See *Ritchie* v. *Konrad*, 115 Cal. App. 4th 1275, 1290 (2004). Other factors that the judge should consider include, but are not limited to: the defendant's violations of protective orders, ongoing child custody or other litigation that engenders or is likely to engender hostility, the parties' demeanor in court, the likelihood that the parties will encounter one another in the course of their usual activities (e.g., residential or workplace proximity, attendance at the same place of worship), and significant changes in the circumstances of the parties. No one factor is likely to be determinative. Cf. *Commonwealth* v. *Gordon*, 407 Mass. 340, 350 (1990) (criminal conviction for violating protective order based on multiplicity of circumstances that "create[d] a picture of a volatile situation in which the possibility of physi-

---

[3]If the plaintiff were suffering from attempted or actual physical abuse, see G. L. c. 209A, § 1 (*a*), or involuntary sexual relations, see G. L. c. 209A, § 1 (*c*), there is no question that an extension should be granted.

[4]See *Commonwealth* v. *Gordon*, 407 Mass. 340, 349 (1990), citing *Commonwealth* v. *Delgado*, 367 Mass. 432, 436-437 (1975) ("In determining whether an apprehension of anticipated physical force is reasonable, a court will look to the actions and words of the defendant in light of the attendant circumstances"). See also *Lonergan-Gillen* v. *Gillen*, 57 Mass. App. Ct. 746, 748-749 (2003) ("The proper exercise of judicial discretion involves making a circumstantially fair and reasonable choice within a range of permitted options").

[5]See *Commonwealth* v. *Gordon*, *supra* at 346 ("Judicial orders issued pursuant to c. 209A afford abused individuals the opportunity to avoid further abuse and provide them with assistance in structuring some of the basic aspects of their lives, such as economic support and custody of minor children, in accordance with their right not to be abused"); *Commonwealth* v. *Basile*, 47 Mass. App. Ct. 918, 919 (1999) ("no contact" provisions of protective order must be interpreted "broadly; there are many ways to achieve a communication").

cal abuse was present"). It is the totality of the conditions that exist at the time that the plaintiff seeks the extension, viewed in the light of the initial abuse prevention order, that govern.

2. *Denial of extension.* In reviewing the judge's decision to deny the plaintiff's request for an extension of her protective order, "we will not substitute our judgment for that of the trier of fact. We do, however, scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts." *C.O.* v. *M.M.*, 442 Mass. 648, 655 (2004), quoting *Commonwealth* v. *Boucher*, 438 Mass. 274, 276 (2002). The judge did not define the burden he believed the plaintiff had to meet to warrant an extension of the order. Also, it is not clear, in the absence of findings, in what respect he deemed the plaintiff's case to be insufficient measured by the proper standard. In addition, apart from a determination that the plaintiff was genuinely frightened of the defendant, the judge did not indicate whether he found credible the plaintiff's testimony relating to the reasonableness or imminence of her fear. Had the judge credited the plaintiff's testimony, the evidence would have been adequate to justify an extension of the order under the proper legal standard.[6] However, had the judge chosen not to credit her testimony, he might have properly decided not to extend the order. Thus, without benefit of the judge's credibility assessment of the plaintiff (except on one issue), we cannot determine whether an extension would be required on the facts of this case or alternatively, whether a denial of the extension would be within the judge's discretion. Accordingly, we remand the case for further proceedings. See, e.g., *Care & Protection of Ian*, 46 Mass. App. Ct. 615, 619-621 (1999) (vacating visitation order and remanding custody case because, inter alia, incorrect legal standard used as to mother's visitation rights).

3. *Vacation of original order.* The judge's sua sponte vaca-

---

[6]According to the plaintiff's testimony and the hearing transcript, her case presented many of the same facts that justified extensions in previous cases, including serious prior physical abuse, see *Doe* v. *Keller*, 57 Mass. App. Ct. 776, 779 (2003); violations by the defendant of previous no contact orders, see *Rauseo* v. *Rauseo*, 50 Mass. App. Ct. 911, 912 (2001), and *Pike* v. *Maguire*, 47 Mass. App. Ct. 929, 930 (1999), and an ongoing dispute over visitation rights, see *Rauseo* v. *Rauseo, supra*, and *Pike* v. *Maguire, supra*.

tion of the original order was error. The only issue before the judge was whether the order should be extended. "[A]t a renewal hearing, a judge's discretion is broad: she may permit the existing order to expire without renewal; she may issue a permanent order; or she may issue an order of shorter duration of 'any time reasonably necessary' to protect the abused person." *Crenshaw* v. *Macklin*, 430 Mass. 633, 635 (2000). See Guidelines for Judicial Practice: Abuse Prevention Proceedings § 6:09 commentary (Dec. 2000). However, judicial discretion is not so broad as to allow a judge, sua sponte, to vacate an original order. The original order, having been granted two years earlier, was to expire on its own terms. No appeal was taken from that order. Its underlying basis was not to be reviewed, nor its validity second guessed at the extension hearing.

4. *The remedy.* As noted above, the plaintiff is entitled to a hearing at which the judge applies the correct legal standard to the question whether her original order ought to be extended. The order vacating the abuse prevention order is vacated, and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*